```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                          NORTHERN DIVISION
                           ASHLAND, KENTUCKY
3

4

5  ASHLAND HOSPITAL CORPORATION,        ) Ashland Civil
   d.b.a. KING'S DAUGHTERS MEDICAL CENTER,) Action No. 11-16
6                                        )
        Plaintiff,                       )
7                                        )
   -vs-                                  )
8                                        ) February 28, 2012
   AFFILIATED FM INSURANCE COMPANY,      ) 8:30 a.m.
9                                        )
        Defendant.                       )
10

11

12        TRANSCRIPT OF TELEPHONIC CONFERENCE PROCEEDINGS
              BEFORE THE HONORABLE EDWARD B. ATKINS
13            UNITED STATES DISTRICT MAGISTRATE JUDGE

14

15  Appearances of Counsel:

16  On behalf of Plaintiff:     MARSHALL R. HIXSON, ESQ.
                                Stites & Harbison, PLLC
17                              250 West Main Street
                                2300 Lexington Financial Center
18                              Lexington, Kentucky  40507

19  On behalf of Defendant:     S. JOSEPH WELBORN, ESQ.
                                Smith Cashion & Orr, PLC
20                              231 Third Avenue N.
                                Nashville, Tennessee  37201
21
    Court Reporter:             PEGGY W. WEBER, RPR
22                              Official Court Reporter
                                U.S. District Court
23                              P.O. Box 362
                                Lexington, Kentucky  40588
24                              (859) 421-0814

25  Proceedings recorded by mechanical stenography,
    transcript produced by computer.
```

1       (Whereupon, the Telephonic Conference proceedings

2   commenced on Tuesday, February 28, 2012, at 8:30 a.m., on

3   the record in open court, as follows.)

4           THE COURT:  Let's go ahead and go on the

5   record, Ms. Weber.

6           COURT REPORTER:  Okay, Judge.

7           THE COURT:  It's Ashland Civil 11-16, Ashland

8   Hospital Corporation, d.b.a. King's Daughters Medical

9   Center versus Affiliated FM Insurance Company.

10          All right.  Counsel, for Ashland Hospital

11  Corporation, would you state your appearance, please?

12          MR. HIXSON:  Good morning.  Marshall Hixson for

13  the plaintiff Ashland Hospital Corporation.

14          THE COURT:  Great.  And for Affiliated FM

15  Insurance?

16          MR. WELBORN:  Yes, Your Honor.  Joe Welborn on

17  behalf of Affiliated FM Insurance Company.

18          THE COURT:  All right.  Gentlemen, I understand

19  we have an issue as it relates to a 30(b)(6) deposition,

20  and there are -- you've worked out a number of topics,

21  but there are still two on which you differ as it relates

22  to what can be asked during the deposition.

23          And I think, Mr. Welborn, you asked for the

24  call, is that -- or your office asked for the call I

25  should say.  Is that -- would that be correct?

1               MR. WELBORN:  Yes, that is correct.

2               THE COURT:  All right.  Why don't you go ahead

3  and start off by telling me what this is about?

4               MR. WELBORN:  Yes, sir.  Your Honor, you

5  have -- basically the procedural aspect of where we are

6  we issued a Rule 30(b)(6) deposition to the hospital --

7               THE COURT:  Mr. Welborn.

8               MR. WELBORN:  Yes, sir.

9               THE COURT:  I'm having a little trouble hearing

10  you.

11              MR. WELBORN:  Okay.  Let me turn you off

12  speaker then.

13              THE COURT:  Yeah, that would be good.

14              MR. WELBORN:  Okay.  Can you hear me better

15  now?

16              THE COURT:  That's much better.

17              MR. WELBORN:  Okay.  Sorry about that.

18              Yes, my client issued a notice of 30(b)(6)

19  deposition at the hospital.  And as you correctly pointed

20  out, we had several topics and the notice, but only two

21  remain that we cannot agree on, and we've had several

22  e-mails and calls concerning those topics.

23              Your Honor, as you know, this is an insurance

24  coverage case.  The plaintiff filed a declaratory

25  judgment seeking coverage under the policy at issue.

1    Really I think that this dispute stems from a dispute

2    between the parties as to what is actually the policy in

3    issue.

4         The plaintiff contends that it's one thing,

5    and my client claims that it's something else.  And as

6    part of our written discovery to the plaintiff, we

7    asked them to produce any and all documents that relate

8    to the claims figuring that the plaintiff would produce

9    the insurance policy given that this is a coverage

10   dispute.

11        No policy was produced in discovery.  And, in

12   fact, we had several pointed requests for admissions

13   concerning what we believe to be certain aspects of that

14   policy in terms of requirements and case of loss and

15   things of that nature to see if the plaintiff had

16   complied with the policy.

17        They denied those requests for admissions.  So

18   at that point we knew there must be some kind of dispute

19   as to what they deem as the policy and what we view as

20   the policy.  So that's issue number one.

21        We've asked them to produce the policy.  They

22   have indicated to us that they received certain papers

23   from their broker, which is March -- Marsh Mac.  And they

24   have not produced that yet.  So that's one thing that we

25   would like to have produced.

1              The second issue is the 30(b)(6) topics.  Our

2    30(b)(6) topics to the plaintiff were -- topic 18 is --

3    let me get that out, Your Honor.  "Knowledge of the

4    Policy and its terms and conditions."

5              And 19 is all efforts by the hospital to comply

6    with the policy as it relates to the March 24, 2010,

7    incident.

8              And I just -- just to refresh your memory on

9    this, this is the hospital had a computer storage erase

10   system that was in a data center that experienced high

11   temperatures, and then they've sued my client for

12   coverage under the policy for the replacement value of

13   that computer system.

14             So, Your Honor, we feel that, you know,

15   knowledge of the policy is critical here.  It's

16   especially critical in light of the fact that -- and

17   through discovery and through pleadings filed in this

18   case, the plaintiff has raised the question of whether

19   the policy is ambiguous.

20             And I think that if a party raises the issue of

21   whether a policy is ambiguous, we certainly should be

22   allowed to question them about the policy, their

23   understanding of the policy, and certainly be entitled to

24   find out from them why they believe it's ambiguous.

25             And I would cite that in their reply to our

1   opposition of their motion for declaratory judgment, they

2   devoted considerable amount of time to the policy being

3   ambiguous.

4           Additionally, as the Court pointed out in its

5   order where it denied the motion for declaratory

6   judgment, the Court stated, "Defendants seeks discovery

7   to determine whether plaintiff fulfilled its obligations

8   under the terms of the policy.  For example, defendant

9   argues that plaintiff has not fulfilled its obligation to

10  exhibit to any person designated by defendant all that

11  remains of any property herein described."

12          So we believe that we are certainly entitled to

13  have a witness be presented that we can question about

14  whether or not they fulfilled their obligations under the

15  policy, and we believe that their efforts to comply with

16  the policy fit right in with that.

17          So we would suggest that the topics are very

18  relevant.  They're not overly broad or ambiguous.  And we

19  believe that we should be entitled to question a

20  representative about that.

21          THE COURT:  Okay.  Thank you, Mr. Welborn.

22          Mr. Hixson?

23          MR. HIXSON:  Judge, breaking this up into two

24  pieces in kind of the order presented.  I don't think

25  we're going to have a dispute about what the policy is.

1   I have in my briefcase that -- and Joe asked me on

2   Thursday to give him a copy of the policy that we

3   received from our broker.  Thursday afternoon I agreed I

4   would give it to him as soon as I get it from KDMC, and I

5   have that with me to exchange.  And it is a copy of the

6   binder that it came in that has Affiliated FM's

7   trademarks all over it, and it's all the contents.  I

8   don't think we have any dispute about what -- or about

9   the contents of the policy.

10          The real dispute in this case or in this

11   discovery dispute that really relates to the 30(b)(6)

12   topics is what the policy means, how it is interpreted.

13   That is really what the dispute is.

14          And we submit that for purposes of 30(b)(6), I

15   have to find corporate witnesses to testify about facts.

16   And if they want to ask KDMC everything they did with

17   this computer system and everything they didn't do, and

18   who they talked to, and who they didn't, who they wrote,

19   who they didn't, those are all facts, and those are all

20   fair game for a 30(b)(6) deposition.

21          But what they want is for my client to apply

22   those facts to the policy and to say what we did that is,

23   quote, in compliance with the policy and what we may

24   think is ambiguous as those facts are applied to the

25   policy.

1          So what we dispute is an obligation to apply

2    facts to the policy, because those are either legal

3    conclusions or they're argument.

4          THE COURT:  Let me ask you this, Mr. Hixson.

5    It is -- as it is a contract dispute and there is an

6    issue of ambiguity, wouldn't they be allowed to identify

7    some portion of the policy and say, what, if anything,

8    did you do based on your reading of that policy either to

9    discover their course of performance or how they

10   actually, say, factually acted in response to what they

11   read?  Not by asking them directly, you know, identify

12   every ambiguous term in the policy, but simply when you

13   got this policy and you read this, what did you do?  I

14   mean, wouldn't they be able to do that?

15         MR. HIXSON:  Well, here is the -- here's the

16   fundamental problem I have with that question, and it's a

17   fundamental problem within my client.  This was a

18   computer that over -- this was their primary computer

19   storage network that stored basically everything in the

20   hospital, including medical records.  It overheated, and

21   the manufacturer called it unreliable, said it was

22   severely compromised, and recommended that we replace it.

23   Our IT guys then generated a purchase order essentially

24   and replaced it.  We had no choice to make -- but to make

25   a business decision to replace the computer.

1              Now, it turns out that we had coverage for

2    that.  But when you say -- when you go -- when I -- I

3    have to go to an IT person and say, tell me what you did

4    to comply with the policy, the answer is, I'm an IT guy.

5    I don't read insurance policies.  I had a computer that

6    was failing, and I had to replace it, and I went and

7    replaced it.

8              So the problem we have is we replaced this

9    because somebody told us to.  We didn't replace it

10   because an insurance policy required us to do that.

11             THE COURT:  Then that would be the answer.

12             MR. HIXSON:  But, Judge, here is what I think

13   is a bigger problem.  This is a 60-plus-page policy.

14             THE COURT:  Right.

15             MR. HIXSON:  We filed a petition for

16   declaratory relief claiming that this insurance -- this

17   computer loss is covered by the physical loss -- or

18   physical damage or loss -- physical loss or damage

19   provision in the policy.  Very simple.  Physical loss or

20   damage.  Does this qualify or not?  That is the only

21   issue we think is in dispute.

22             The insurance company, however, after suit

23   is coming up with a bunch of new reasons we never

24   heard before litigation for denying our claim, and they

25   haven't officially told us exactly why they're denying

1   our claim today.  We know why they denied our claim a

2   year ago.

3           But further problem we have is I got a 60-page

4   policy, and I don't really know what they are claiming we

5   did or did not do as applied to that policy.  So I can't

6   really find a non-lawyer to read and understand a policy

7   and be prepared to testify about what we did or what we

8   did not do under any number of dozens and dozens of

9   provisions.

10          THE COURT:  I don't think -- I mean, we're

11  talking about a fact discovery deposition here I believe.

12  But it sounds as though you're concerned about a finding

13  admission on a -- for an expert opinion regarding

14  coverage issues.

15          Anyway, let's go on to topic 19.

16          MR. HIXSON:  Well, Your Honor, topic 19 is --

17  well, actually, if we -- Your Honor, may we back up just

18  a little bit?

19          THE COURT:  Sure.

20          MR. HIXSON:  Topic 18 says, knowledge of the

21  insurance policy.

22          THE COURT:  Right.

23          MR. HIXSON:  Our knowledge of the policy is

24  reading it.  It's their policy.  They gave it to us.  The

25  true answer to interrogatory number 18 is our knowledge

1   of the policy is what it says.  I don't know how we

2   designate a designee to talk about that.  It's their

3   policy.  They wrote it.  They gave it to us.

4           But moving on to topic 19, all efforts to

5   comply with the policy, that is inherently argumentative

6   because they're trying to make us fit our conduct within

7   the policy.  And one of the things they've -- you know,

8   they want to know whether we performed certain acts

9   relating to the provisions in the policy.

10          Just by way of example, Your Honor, of one

11  thing we have struggled with, there is a provision in the

12  policy that says, "Affiliated FM has a right to inspect

13  the property."  That's all it says.  They initially told

14  us they think that means we have a duty to hire EMC to

15  test the property for them.

16          And then we said, no, it says you'll have a

17  right to inspect it.  It doesn't put a duty on us.  It

18  definitely doesn't put a duty on us to hire somebody to

19  test it for you.

20          But yet they appear to still maintain that we

21  have violated the provision that gives them a right to

22  inspect.  Now, there's no obligation in that provision,

23  but maybe there's an implicit duty to allow them.

24          What I'm really getting at, Your Honor, is what

25  that policy means is subject to interpretation.  And for

1    them to ask us to submit someone to talk about what we

2    did to comply with it, the parties don't even agree as to

3    what that actually requires.  And if we can't agree on

4    what it requires, how can I find a witness to talk about

5    what we did to comply with it?  Aside from the fact that

6    most of all the insurance claims demand and

7    correspondence was all done by legal departments.  And,

8    you know, are they really expecting me to designate a

9    lawyer to give 30(b)(6) testimony?

10            THE COURT:  All right.  Thank you, Mr. Hixson.

11            Mr. Welborn, anything else?

12            MR. WELBORN:  Yeah, just a brief reply.  I'm

13    not asking them to produce a lawyer to respond to these

14    questions.  Perhaps there's someone that the lawyer

15    answers to at the hospital that could testify as to this

16    policy.  After all, the hospital has sued my client for

17    over two-million dollars.  I would assume that there's

18    somebody -- maybe I'm wrongfully assuming this -- at this

19    hospital that read this policy and understands the terms

20    of the policy.

21            And I think that we're entitled to ask the

22    hospital's corporate representative, or whoever they

23    designate, questions concerning what they did or did not

24    do to comply with certain provisions of the policy.

25    Specifically, while Marshall has mentioned the right to

1   inspect, there is a --

2        (Whereupon, an audible tone was heard on the

3   telephone conference call.)

4              THE COURT:  Good morning?  Hello?

5              MR. HIXSON:  Yeah, this Marshall Hixson.  I'm

6   still here.

7              THE COURT:  Okay.  Great.  Did we lose someone?

8              COURT REPORTER:  I'm here, Judge.

9              THE COURT:  Okay.  Mr. Welborn?

10             MR. HIXSON:  We must have lost Joe Welborn,

11  Judge.

12             THE COURT:  Let's give him a minute, see if he

13  calls back.  I'm sure he is having one of those panic

14  moments right now.

15             MR. HIXSON:  Yeah, he's in a conference room

16  with a -- another lawyer's conference room.

17             THE COURT:  Oh, yeah.

18             MR. HIXSON:  I guess my decision to stay in the

19  hotel for the call was a good one it looks like.

20             THE COURT:  It worked out well for you.

21             MR. HIXSON:  Yeah.

22        (Whereupon, an audible tone was heard on the

23  telephone conference call.)

24             THE COURT:  Here we are.

25             MR. WELBORN:  I apologize, Judge Atkins.

1          THE COURT:  That's all right.  We heard -- you

2    get an audible tone when we lose you, so we knew you were

3    gone.

4          MR. WELBORN:  Sorry about that.

5          I'll try to just make this quick.  But there is

6    a provision in the policy, at least we contend this

7    provision is in the policy.  And we contend, and they

8    have admitted -- they being the hospital have admitted --

9    that they received this page as part of the package from

10   their broker, which is titled requirements in case of

11   loss.  And it's a detailed list of things the insured

12   must do in order to invoke coverage, one of which is to

13   file, submit a sworn proof of loss within 60 days of the

14   loss.

15         And we're entitled to know what, if anything,

16   they did to comply with that provision.  Because in

17   Kentucky, I believe the law is pretty clear, we've done

18   some research on this, that if there is a provision like

19   that in a policy, they fail to comply with it, there's no

20   coverage.

21         And so that's where we get back to the Court's

22   order wherein the Court stated, "Defendants seeks

23   discovery to determine whether plaintiff fulfilled its

24   obligations under the terms of the policy."

25         The reason that's in there is that we -- we're

1    entitled to raise as a defense that they didn't comply

2    with the policy.  And I think that we're entitled to

3    discover all facts that may tend to show or not to show

4    that they complied with the policy.

5            So that's really all I have to add, Your Honor.

6            THE COURT:  Okay.  Thank you.

7            MR. HIXSON:  Your Honor, may I have a brief

8    response?

9            THE COURT:  Sure, go ahead.

10           MR. HIXSON:  Your Honor, they are free to ask

11   all the facts they want.  But applying those facts to the

12   policy is where we get in the problem.  They want to say,

13   okay, did you not fill out this form?  No.  Okay, then

14   you agree with me that you are in breach of the policy,

15   and you did not comply with the policy.

16           That conclusion I believe is an improper

17   question.  It is argumentative.  And really what they

18   want us to do is to take a 60-page policy and prove we

19   didn't breach any of it.  Combine that with a problem

20   of -- well, Judge, there's an old adage in insurance law

21   that the more coverage there is the more complex the

22   policy is.

23           The coverage on this policy is tens of millions

24   of dollars.  This is the most difficult insurance policy

25   I've ever read, and I do this for a living.  Finding a

1   non-lawyer to talk about and try to interpret and apply

2   this policy is going to be impossible.

3            And I can't realistically expect anybody to be

4   prepared for that.  Aside from the fact that I don't even

5   know what provisions they're claiming we breached.  I got

6   a couple -- they've headed a couple.  But nothing in

7   their denial letter talks about any of these things.  If

8   they're going to make us testify about the policy, at

9   least tell me what provisions you want to ask us about

10  because it's 60 pages long, and I would spend weeks

11  trying to prepare somebody for it.

12            THE COURT:  Mr. Welborn?

13            MR. WELBORN:  Yes, sir.

14            THE COURT:  Mr. Hixson leads me to believe

15  that it's his impression that in these -- in this

16  deposition of this 30(b)(6) or these 30(b)(6) witnesses

17  you intend to ask questions calling for legal conclusions

18  either regarding coverage or lack of coverage or legal

19  conclusions regarding whether there's an actual ambiguity

20  under the policy.  Is that what you intend to do?

21            MR. WELBORN:  No, that's not what I intend to

22  do.  Let me first hit the ambiguity.  If they have

23  contended that the policy is ambiguous, I believe that

24  I'm entitled to know from them which provisions they

25  contend are ambiguous.  That is an assertion that they

1  have made.  I need to know the facts that they believe

2  tend to show that the policy is ambiguous.

3          Now, I understand that a determination as to

4  whether the policy is ambiguous or not is something for

5  the Court to decide.  However, they have made that

6  assertion, so I'm entitled to ask them about all the

7  facts that they have in their possession that support

8  their contention that the policy is ambiguous.

9          With respect to legal conclusions, I have no

10  intention of asking them whether they have breached the

11  policy.  That is for the Court to decide.  I simply want

12  to ask them whether they have done certain things that we

13  believe they should have done and that they're required

14  by law to do in order to get coverage.  That's what we

15  would like to ask.  And it was the intent of the two

16  topics that are at issue before you.

17          THE COURT:  Mr. Hixson, anything finally?

18          MR. HIXSON:  Your Honor, two things.  When they

19  mentioned they want us to ask certain things that we did

20  or did not do, I don't have a frame of reference because

21  they got a 60-page policy, and they won't narrow it down

22  for me.  And their denial letter doesn't talk about any

23  of these things.  They've come up with these

24  post-litigation.  They haven't told me what they are.

25  Now, they're the subject of written discovery, and I've

1  given them extension to answer that.

2            So perhaps we don't -- if we had to go there,

3  we don't do it until after they answer the discovery.

4            The second point is ambiguity is always a

5  question of law.  The classic example on ambiguity is

6  this.  The word automobile in an insurance policy is not

7  normally ambiguous.  Everybody knows what an automobile

8  is.  The word automobile is not ambiguous.  If you go to

9  a deposition, nobody would say it is.  But what if you

10  have a golf cart that gets on a wreck on a highway?

11  Well, a golf cart has got a brake, it's got a gas pedal,

12  it's got four wheels, and it has a motorized engine.  Is

13  it an automobile?  I don't know.  Suddenly the word

14  automobile becomes ambiguous based on the facts as

15  applied.

16            So the problem we have here is they want to ask

17  us in a vacuum whether any word or phrase in a 60-page

18  policy is ambiguous when the reality of it is the

19  ambiguities usually come to light once facts are applied.

20  And lawyers argue ambiguity in their briefs, and the

21  Court decides ambiguity as a matter of law under the case

22  law.

23            So when they say they want to ask us about

24  ambiguity, it's inherently argumentative.  It requires a

25  context.  Lawyers argue that in briefs, and the Court has

1    decided it as a matter of law.

2              So we submit that ambiguity is not the proper

3    topic of a 30(b)(6) deposition.

4              THE COURT:  Okay.  Here is what we're going to

5    do.  As it relates to the topic, I believe Mr. Welborn

6    can ask factual questions as it relates to both topics

7    18 and 19.

8              I think Mr. Hixson has a point, and that -- I

9    don't know who this 30(b)(6) witness is, but I don't know

10   that a strict question, show me an ambiguity in the

11   policy, is a proper question.  So I don't think that kind

12   of a question is allowed.

13             However, Mr. Welborn is clearly entitled to

14   identify provision of a policy and say, what did you do

15   in response to this under this circumstance or -- and

16   then why did you do it?

17             So I think under -- within those parameters we

18   can go forward.  Of course, I'm not in a position to

19   review in advance every question that Mr. Welborn is

20   going to ask.  That's really not what we do.

21             Mr. Hixson, you know, you have certain rights

22   as an attorney in the case.  You can object.  But I -- we

23   can take any other matter up at a later date.  But based

24   on what we know, I think within those parameters it

25   should go forward.

1          MR. HIXSON:  Your Honor, the 30(b)(6) requires

2  that the topics must be reasonably defined.  We would

3  submit that reasonably defined would require them to give

4  us at least by paragraph number the provisions they want

5  to ask us about.  I mean, a 60-page policy there's things

6  in there that I don't think have any relation to this

7  case, but I don't know.  And I -- 30(b)(6) obligates me

8  to have someone that is knowledgeable and prepared.  I

9  don't know how I can do that if I don't know what -- if I

10 don't have any idea at all what provisions they are

11 asking about.

12          THE COURT:  Well, and that may be a fair point.

13 But if -- and if you don't get anything more descript,

14 then there's a good argument whether you violated

15 30(b)(6).  You see what I'm saying?

16          MR. HIXSON:  Well, that's frankly what I am

17 trying to avoid.

18          THE COURT:  Right.

19          MR. WELBORN:  Well --

20          THE COURT:  And I understand that, but -- and I

21 think you're probably correct.  There has to be some

22 parameters, again, to indicate whether -- I think help is

23 there one or more witnesses to answer particular topics.

24 And if you don't have that, it may be understandable that

25 you have to do more than one deposition.

1          MR. WELBORN:  Could I just make a suggestion

2   since we've got you on the phone, Judge Atkins?

3          THE COURT:  Sure.

4          MR. WELBORN:  One of the reasons that this, of

5   course, has become such a pressing matter and we've

6   gotten in front the Court is that there is a discovery

7   cut-off date of this Thursday, March 1st, for my client

8   to conduct discovery.

9          THE COURT:  Okay.

10         MR. WELBORN:  What I would propose, and I

11  don't -- you know, I don't know if Mr. Hixson has the

12  authority to approve this or not, or if he needs to speak

13  to his client.  I would certainly understand either way.

14         What I would propose is that if he would like

15  for me to -- which it sounds like he does -- further

16  refine the questions that I have submitted to him, the

17  30(b)(6) topics, to more fully delineate and more

18  specifically delineate the areas of the policy that I

19  would like to ask specific questions concerning the facts

20  as to what they did or didn't do with respect to those

21  provisions, I can do that.

22         And the reason I'm suggesting this is, is that

23  I -- we're two days away.  In fact, Mr. Hixson and I are

24  in Boston taking the deposition of a third party -- would

25  be to request the Court to grant an extension of a week

1    to 10 days for me to revise those topics for Mr. Hixson

2    so that he can have adequate time to prepare his client,

3    representative, whoever that may be.   Rather than me come

4    on Thursday and do, you know, 17 topics and then come

5    back and do two at a later date.

6            It seems like to me that there really is no

7    prejudice to anybody by letting me do this, extending the

8    deadline, and letting us reschedule the 30(b)(6)

9    deposition within a week to 10 days.

10           I've suggested this before to Mr. Hixson.

11   Of course, we didn't have the input from you, Your Honor,

12   on this issue.   But to me that makes the most sense

13   under the circumstances that we are in.   And I think

14   that -- we have worked with 16 of the 19 topics that he

15   objected to.   I think that we can probably narrow this

16   down so that everyone is comfortable and everyone knows

17   before we step foot in the room we know what we are going

18   to do and what we intend the representative be able to

19   answer.

20           So that would -- that's just a suggestion.

21   I don't know whether Mr. Hixson is agreeable to that or

22   how we would like to handle that, but it's just a

23   suggestion.

24           THE COURT:   Mr. Hixson?

25           MR. HIXSON:   Well, Judge, if -- you know, as

1  of -- if I don't get some refined topics, I don't really

2  think I can submit a 30(b)(6) witness at all that's going

3  to have any meaning.  If Joe is willing to give some

4  refined topics, I'm going to have to -- I mean, I'm going

5  to figure out who can testify and prepare them.  So

6  realistically, if he is going to give some refined

7  topics, I'm going to need -- frankly, need more time to

8  get them ready anyway.

9           The real rub is I've got -- the topics we have

10 now are primarily technical related that deal with

11 computer system, and my technical person is ready to give

12 a deposition on Thursday.  You know, if we can get all

13 these done in one day two weeks from now, I can

14 probably -- you know, I'm sure my client would go for

15 that.  What they would like to avoid is multiple days'

16 deposition but then -- but the can just being kicked down

17 the road.

18           THE COURT:  Well, what if -- I mean, we can go

19 forward with -- I can tell you all to go forward with

20 what you have scheduled and still give you a couple extra

21 weeks.  And anything that comes up that needs to be

22 addressed that's still hanging out there after Thursday,

23 you can take up.

24           MR. HIXSON:  Yeah.  I mean, Joe are you

25 contemplating we can get them all done in one day still?

1          MR. WELBORN:  I think that we can get them all

2   done in one day.  I really -- the areas on the policy are

3   not that long.  I do -- I would be more than happy to

4   give you a refined scope so that you'll at least know

5   what -- where we're going and the areas that I'm going to

6   be questioning on.

7          It would be my preference to give you that and

8   move the deposition back a week or two to a date that we

9   are both available and that your client and whoever the

10  representative is that's going to testify about these

11  insurance issues is available, along with Mr. Phipps who

12  you've already designated for the other technical issues,

13  and do it all on one day.  That's what I would prefer to

14  do --

15         MR. HIXSON:  Yeah.

16         MR. WELBORN:  -- as opposed to --

17         MR. HIXSON:  Yeah, I would too.

18         MR. WELBORN:  -- having those issues sort of

19  out in the wind and then me having to come back at some

20  later date and just -- I can just foresee that being a

21  big problem.  And, plus, you've got the issue that you

22  aren't -- haven't prepared that witness.

23         MR. HIXSON:  Yeah.  Well, Joe, with the Judge's

24  permission, why don't we just extend our deposition

25  deadline?  You want to --

1                    MR. WELBORN:  Yeah.

2                    MR. HIXSON:  -- go two, two-and-a-half weeks

3    just to make sure we can get everybody in the same

4    place?

5                    MR. WELBORN:  That is fine with me as long as

6    the Court is okay with that.

7                    THE COURT:  I can -- how about -- I can move it

8    to March the 16th, which is two weeks from Friday.

9                    MR. WELBORN:  Yeah.

10                   THE COURT:  Close of business on the 16th.

11                   MR. HIXSON:  Yeah, I think that will work.

12                   MR. WELBORN:  Yes, that will be plenty enough

13   time.

14                   THE COURT:  All right.  Gentlemen, submit an

15   order on that.

16                   MR. WELBORN:  Okay.

17                   MR. HIXSON:  Okay.

18                   MR. WELBORN:  Thank you Your Honor.

19                   THE COURT:  All right.  Is there anything else

20   this morning, gentlemen?

21                   MR. HIXSON:  Judge, I think that's it.

22                   Joe, I will be over there in about 10 minutes.

23                   MR. WELBORN:  All right.  Thank you.

24                   THE COURT:  Thank you all very much.

25                   MR. HIXSON:  Thank you.

1                    THE COURT:  Good-bye.

2          (Whereupon, the Telephonic Conference proceedings

3    concluded at 9:05 a.m.)

4                    C E R T I F I C A T E

5          I, Peggy W. Weber, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9
     March 8, 2012                      s/Peggy W. Weber
10   DATE                               PEGGY W. WEBER, RPR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25